Appeal No. 2022-1230
(Serial No. 15/962,451)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

IN RE UNIVERSAL ELECTRONICS, INC.,
APPELLANT.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board.

BRIEF FOR APPELLEE—DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

THOMAS W. KRAUSE
Solicitor

AMY J. NELSON
Senior Counsel for Patent Policy and
Litigation

MICHAEL S. FORMAN
MONICA B. LATEEF
Associate Solicitors
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035
*Attorneys for the Director of the
United States Patent and Trademark Office*

July 14, 2022

5.     A switching device, comprising:

a plurality of audio/video (AV) ports,

a receiver; and

control logic that is operable to selectively connect at least one of a plurality of source devices to a sink device each of which is connected to a corresponding one of the plurality of AV ports, the control logic being configured to:

determine that the receiver has received an infrared (IR) signal transmitted by a remote control device, wherein the IR signal transmitted by the remote control device comprises a protocol and a command value that is directly recognizable by a first device among the plurality of source devices and the sink device;

in response to determining that the receiver has received the IR signal, determine that the remote control device is in use; and

in response to at least determining that the remote control device is in use, controlling a connection between the at least one of the plurality of source devices and the sink devices as a function of the detected IR signal.

Appx24.

# TABLE OF CONTENTS

I.    Statement of the Issue ...................................................................1

II.   Statement of the Case....................................................................2

    A.    Claimed Invention: Switching Device That Responds to an IR
        Signal Intended for a Source or Sink Device .......................................3

    B.    Garg: HDMI Hub With IR Input Port ................................................6

    C.    Igoe: Wireless Home Entertainment System With Universal
        Remote...........................................................................................7

    D.    The Board's Decision .....................................................................9

III.  Summary of the Argument..............................................................11

IV.   Argument....................................................................................12

    A.    Standard of Review ......................................................................12

    B.    The Board Correctly Affirmed the Obviousness Rejections of
        Claims 1-12 ................................................................................13

    C.    Universal Electronics' Arguments Lack Merit ...................................17

        1.  The Examiner Established That Garg and Igoe Teach or
            Suggest the Claimed Switching Device .........................................17

        2.  The Examiner Articulated a Sufficient Reason to Combine
            Garg and Igoe ..............................................................................21

V.    Conclusion..................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Applied Materials, Inc., In re*, 692 F.3d 1289 (Fed. Cir. 2012) ..............................20

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281 (1974)...........20

*ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214 (Fed. Cir. 2016) .................................16

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)..................................................13

*Constr. Equp. Co., In re*, 665 F.3d 1254 (Fed. Cir. 2011)........................................12

*Gartside, In re*, 203 F.3d 1305 (Fed. Cir. 2000)................................................ 12, 13

*Huston, In re*, 308 F.3d 1267 (Fed. Cir. 2002) .......................................................20

*ICON Health & Fitness, Inc., In re*, 496 F.3d 1374 (Fed. Cir. 2007) ....................20

*Inland Steel Co., In re*, 265 F.3d 1354 (Fed. Cir. 2001).........................................17

*Jolley, In re*, 308 F.3d 1317 (Fed. Cir. 2002) .........................................................13

*Jung, In re*, 637 F.3d 1356 (Fed. Cir. 2011) .................................................... 10, 21

*Kronig, In re*, 539 F.2d 1300 (CCPA 1976) ...........................................................23

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ........................... 15, 16, 18, 22

*Lamberti, In re*, 545 F.2d 747 (CCPA 1976)...........................................................18

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157 (Fed. Cir. 2007).. 19, 22

*LG Elecs., Inc. v. Conversant Wireless Licensing S.A.R.L.*, 759 F. App'x 917 (Fed. Cir. 2019) .............................................................................................................17

*Merck & Co., In re*, 800 F.2d 1091 (Fed. Cir. 1986)...............................................18

*Mouttet, In re*, 686 F.3d 1322 (Fed. Cir. 2012) ........................................13

*NTP, Inc., In re*, 654 F.3d 1279 (Fed. Cir. 2011) ....................................17

*NuVasive, Inc., In re*, 842 F.3d 1376 (Fed. Cir. 2016) .............................20

*Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299 (Fed. Cir. 2006)........................18

*Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280 (Fed. Cir. 2012).....................16

*Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325 (Fed. Cir. 2010) ...........19

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006) .......22

*Watts, In re*, 354 F.3d 1362 (Fed. Cir. 2004)........................................12

*Wyers v. Master Lock Co.*, 616 F.3d 1231 (Fed. Cir. 2010)...................................22

**Statutes**

35 U.S.C. § 132 ................................................................................21

**Regulations**

37 C.F.R. § 1.111(b) ........................................................................10

37 C.F.R. § 41.50(c)........................................................................23

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal in connection with this patent application that has previously been before this Court or that is currently pending in any other court. The Director is also unaware of any related cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

# I.    STATEMENT OF THE ISSUE

A switching device serves as a hub for a home entertainment system, connecting source devices (*i.e.*, devices that provide an input signal to the switching device, such as a DVD player) to sink devices (*i.e.*, devices that receive an output signal from the switching device, such as a television).  Appellant Universal Electronics' representative claim 5 is directed to a switching device that acts in response to an infrared (IR) signal transmitted by a remote control "wherein the IR signal . . . comprises a protocol and a command value that is directly recognizable by a first device among the plurality of source devices and the sink device."  For example, if a user wants to select a DVD player as the active source device, the user can press the power button on the DVD player remote, and the signal sent from the remote will both power on the DVD player and cause the switching device to make the DVD player the active source device.

The prior art also teaches switching devices.  Garg discloses a switching device where a user can control the connection between source and sink devices via buttons on the switching device or a remote control.  Igoe also discloses a switching device and discloses two different ways that a user may select an active source.  First, a universal remote control can be used to select a source, where the remote control will then directly control the selected source device.  Second, the switching device can automatically recognize a user's direct interaction with a

source device and select that source device as the active device. Igoe provides the example of the switching device automatically selecting the DVD player as the active source when a user inserts a DVD.

The Board affirmed the Examiner's rejection of the claimed invention as obvious in view of the prior art. The sole difference between the claimed invention and the prior art is the manner in which a user selects the active source device. Given that Garg and Igoe show multiple ways to perform source selection, the source selection recited in the claimed invention is nothing more than a predictable variation of the prior art. This is especially true in view of the patent application's one-paragraph specification disclosing the claimed invention, where the specification explicitly states that a universal IR receiver—a component that can be added to a prior art switching device to perform the claimed source selection—was already known in the art.

The issue on appeal is whether substantial evidence supports the Board's underlying factual findings and its conclusion that claim 5 would have been obvious in view of Garg and Igoe is correct as a matter of law.

## II. STATEMENT OF THE CASE

On April 25, 2018, Universal Electronics filed the instant patent application, titled "System and Method for Providing an Adaptive User Interface on an Electronic Appliance." Appx27-63. The Examiner rejected claims 1, 3, 5, 7, 9,

and 11 as obvious in view of Garg[1] and Igoe.[2]  Appx226-241.  The Examiner

rejected claims 2, 4, 6, 8, 10, and 12 as obvious in view of Garg, Igoe, and Tzeng.[3]

*Id.*  The Patent Trial and Appeal Board affirmed the Examiner's rejections.

Appx2-17.  This appeal followed.

### A.     Claimed Invention: Switching Device That Responds to an IR Signal Intended for a Source or Sink Device

The specification describes Universal Electronics' claimed invention in a

single paragraph.  Appx48.[4]  It discloses an appliance, such as an audio/video (AV)

receiver **902**, which is capable of switching between multiple source and sink

devices.  Appx48.  A source device is a device that provides an input to the AV

receiver, such as a cable set-top box (STB) **104** or DVD player **904**.  *Id.*  A sink

---

[1]     U.S. Patent Application Publication No. 2007/0220150 (filed Feb. 28, 2007, published Sept. 20, 2007).  Appx401-415.

[2]     U.S. Patent Application Publication No. 2013/0187767 (filed Mar. 5, 2013, published July 25, 2013).  Appx432-456.

[3]     U.S. Patent Application Publication No. 2008/0291074 (filed May 22, 2007, published Nov. 27, 2008).

[4]     The remainder of the specification discloses a digital set top box that can recognize different remotes intended for use by different categories of people (e.g., standard, elderly, children) and adjust its onscreen graphical user interface based on the recognized remote.  *See, e.g.*, Appx40-47.  That invention is claimed in U.S. Patent No. 10,162,316, which issued from a related patent application (Serial No. 13/225,635).  Br. at 2; Appx37.

device is a device that receives an output from the AV receiver, such as TV **106**.

*Id.*



Figure 9

Appx63.

Controlling devices **906** through **908** each correspond to one of devices **104**, **106**, or **904**. Appx48. The AV receiver **902** is adapted to detect which one of controlling devices **906** through **908** is currently in use and configure itself accordingly—by taking actions such as selecting the appropriate inputs and outputs or setting audio volume and equalization levels. *Id.* The AV receiver **902** may include a universal IR receiver capable of identifying and decoding the command transmission formats of multiple device manufacturers. *Id.* Thus, if the user wants the DVD player **904** to be the active input source, the user can press a button on

the DVD player remote, and the resulting IR signal transmitted by the remote will both control the DVD player **904** and cause AV receiver **902** to select the DVD player **904** as the active input source; no separate source selection step is necessary.  Appx48; Appx63.

Claim 5, which is representative recites:

A switching device, comprising:

a plurality of audio/video (AV) ports,

a receiver; and

control logic that is operable to selectively connect at least one of a plurality of source devices to a sink device each of which is connected to a corresponding one of the plurality of AV ports, the control logic being configured to:

determine that the receiver has received an infrared (IR) signal transmitted by a remote control device, wherein the IR signal transmitted by the remote control device comprises a protocol and a command value that is directly recognizable by a first device among the plurality of source devices and the sink device;

in response to determining that the receiver has received the IR signal, determine that the remote control device is in use; and

in response to at least determining that the remote control device is in use, controlling a connection between the at least one of the plurality of source devices and the sink devices as a function of the detected IR signal.

Appx24.

## B.    Garg: HDMI Hub With IR Input Port

Garg discloses a switching device (referred to as a "hub") that includes a fixed number of input ports for connecting HDMI[5] source devices and a fixed number of output ports for connecting HDMI sink devices.  Appx410 ¶ [0039].  An exemplary HDMI hub is shown in Figure 5A:



FIG. 5A

Appx405.

The hub **500** includes input ports **510** for connecting source devices **520** and output ports **540** for connecting sink devices **530**.  Appx412 ¶ [0060].  The hub may include "manual selection means" for selecting a source or sink device. Appx413 ¶ [0065].  The manual selection means include "one or more switches,

---

[5]    "HDMI," which stands for High Definition Multimedia Interface, is a digital connectivity standard used for connecting devices such as STBs, DVD players, and game systems to televisions.  Appx408 ¶ [0007].

buttons or keys" on the front panel of the hub. *Id.* Additionally, Garg discloses

that "the front panel [of the hub] may include remote selection means for

connecting a particular source device to the sink." Appx413 ¶ [0064]. The hub

includes IR input port **590**, IR detect circuitry **670**, and processor **630** to allow a

user to select source and sink devices using an IR remote control:



*FIG. 5D*

Appx406; Appx413-414 ¶¶ [0064], [0072].

### C.     Igoe: Wireless Home Entertainment System With Universal Remote

Igoe discloses a wireless home entertainment system (HES) that is

controlled through a wireless home entertainment hub (WHEH). Appx449 ¶

[0023]. The HES includes source devices **122** and sink devices **124**. *Id.* ¶ [0024].

The WHEH "facilitates the transfer of data between the source and sink devices in

the HES" and "coordinates the interaction between the user **120** and the source and

sink devices **122**, **124**." *Id.* ¶ [0027].

The user may use a remote **118** to "request to activate a source device or to change from one source device to another." Appx451 ¶ [0042]. Alternatively, the user may interact directly with a source device to activate the source device. *Id.* For example, a user's insertion of a DVD into the DVD player **104** will automatically cause the WHEH to select the DVD player **104** as the active source device. *Id.*

The remote control **118** is a universal remote that can control each of the source devices. Appx452 ¶ [0047]. The WHEH sends actuator[6] assignments to the remote based on the currently active source in the HES. *Id.* For example, if the DVD player **104** is the active source device, the actuator assignments on the remote control **118** are for the DVD player. *Id.* "When a user **120** activates an actuator on the remote control **118**, the actuator selection is sent directly to the DVD player **104**, which responds with the corresponding activity for that actuator." *Id.* After the user requests a source change, the WHEH sends new actuator assignments to the remote control **118**. *Id.* Thus, if the user changes the source from the DVD player **104** to the STB **106**, the WHEH sends new actuator assignments to the remote control **118**, and the remote control **118** will then

---

[6] Igoe explains that "actuators" includes "buttons, touch pads, touch screens, or any other actuating assembly recognized by those skilled in the art." Appx450 ¶ [0036].

directly control the STB **106**.  *Id.*  Alternatively, the remote control **118** may store information about the source devices, including actuator assignments, in internal memory.  *Id.* ¶ [0048].  When a user initiates a source change, the remote control **118** will obtain the new actuator assignments from memory, without any assistance from the WHEH.  *Id.*

### D.    The Board's Decision

The Examiner found that Garg discloses a switching device having all the limitations of representative claim 5, including a plurality of AV ports, a receiver, and control logic to connect source and sink devices, but fails to specifically teach that the switching device acts in response to an IR signal sent by a remote control device wherein the IR signal comprises "a protocol and a command value that is directly recognizable by a first device among the plurality of source devices and the sink device."  Appx230-231.  The Examiner, however, found that Igoe discloses that claim element and that it would have been obvious to incorporate that element into Garg's switching device in order to allow communication with external (i.e., sink and source) devices via the remote control.  Appx232.

The Board affirmed the Examiner's rejection.  Appx2-17.  Rejecting Universal Electronics' argument that the Examiner failed to present a prima facie case of obviousness, the Board explained that the Examiner satisfied the initial burden of production when the rejection identified the theory of unpatentability,

the prior art basis for the rejection, and an explanation of where each claim limitation is taught or suggested in the references. Appx6-8 (citing *In re Jung*, 637 F.3d 1356, 1362 (Fed. Cir. 2011)).

The Board explained that "[i]n order to rebut the prima facie case of unpatentability, [the applicant] must distinctly and specifically point out the supposed Examiner errors, and the specific distinctions believed to render the claims patentable over the applied reference." Appx8 (citing 37 C.F.R. § 1.111(b)). The Board determined that Universal Electronics failed to rebut the prima facie case. *Id.* In particular, the Board found that Universal Electronics' arguments were (1) not directed to the Examiner's specific findings; (2) not supported by factual evidence; and (3) constituted a mischaracterization of the Examiner's statements. Appx8-10.

Next, the Board rejected Universal Electronics' argument that the Examiner failed to provide a sufficient rationale for combining Garg and Igoe. Appx10. The Board found that the Examiner "provided articulated reasoning with a rational underpinning" when explaining that a skilled artisan would have combined the references "in order to facilitate communications with the remote controller." Appx11. Again, the Board found that Universal Electronics' arguments were not directed to the Examiner's specific findings and were not supported by evidence. *Id.*

Finally, the Board rejected Universal Electronics' argument that the proposed combination would cause Garg's switching device to be rendered inoperable. Appx13-16. The Board understood Universal Electronics' argument to be a teaching away argument. Appx13. However, the Board found that Universal Electronics failed to adequately explain why the cited portions of Garg teach away from the combination of Garg and Igoe. Appx15-16 (citing Appx412-413 ¶¶ [0055], [0064]-[0066]).

### III. SUMMARY OF THE ARGUMENT

Universal Electronics' representative claim 5 is directed to a switching device that acts in response to an IR signal transmitted by a remote control "wherein the IR signal . . . comprises a protocol and a command value that is directly recognizable by a first device among the plurality of source devices and the sink device." This allows the user to skip a source selection step before using a source device remote to control the source device. The description of this claimed innovation merely consists of one paragraph in the patent specification, which is otherwise devoted to a different invention. And in that single paragraph, the specification acknowledges that the hardware that makes the claimed switching device possible—a universal IR receiver—was already known in the art.

Substantial evidence supports the Board's findings that representative claim 5 would have been obvious in view of Garg and Igoe. Both references disclose

switching devices for use in home entertainment systems, and both references disclose multiple ways in which a user can change sources via the switching device. Garg discloses the use of physical buttons on the face of the switching device or the use of a dedicated IR remote control. Igoe discloses use of a universal remote control or a user's direct interaction with a source device, which the switching device automatically recognizes as a request to activate that source device. Given these disclosures, the Board correctly determined that the claimed switching device's way to change sources was a predictable variation of the prior art.

## IV. ARGUMENT

### A. Standard of Review

Universal Electronics has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Obviousness is a question of law based on underlying findings of fact. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). "The determination of what a reference teaches is one of fact, as is the existence of a reason for a person of ordinary skill to combine references." *In re Constr. Equip. Co.*, 665 F.3d 1254, 1255 (Fed. Cir. 2011). This Court reviews the Board's legal conclusion of obviousness *de novo*, but must uphold the Board's fact findings if they are supported by substantial evidence.

*Gartside*, 203 F.3d at 1316.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion reached. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It is "something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012). For example, "where two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

## B. The Board Correctly Affirmed the Obviousness Rejections of Claims 1-12

The Board rightly affirmed the Examiner's obviousness rejection in view of Garg and Igoe. Appx6-16. In affirming, the Board designated independent claim 5 as exemplary, sustained the rejections of independent claims 1 and 9 for similar reasons, and noted that Universal Electronics did not separately argue the remaining claims. Appx3; Appx16-17. Universal Electronics does not dispute this designation before this Court. Therefore, the Director likewise treats claim 5 as representative.

As the Examiner found, Garg discloses a switching device which includes a plurality of AV ports, a receiver, and control logic to connect source and sink

devices. Appx230; Appx405-406; Appx412 ¶ [0060]; Appx413 ¶ [0064]; Appx413-414 ¶¶ [0070]-[0072]. Garg further discloses that the receiver can detect an IR signal from a remote control, determine that the remote control is in use, and control a connection between source and sink devices as a function of the detected IR signal. Appx230-231; Appx406; Appx413 ¶ [0064]; Appx413-414 ¶ [0070].

Garg does not disclose that the IR signal "comprises a protocol and a command value that is directly recognizable by a first device among the plurality of source devices and the sink device." Appx231. However, Igoe discloses a universal remote control that can send an IR signal that is directly recognizable by source or sink devices. Appx232; Appx452 ¶ [0047]. Igoe further discloses that source selection can be performed through use of the same universal remote control, or by interacting directly with a source device. Appx451 ¶ [0042]. As an example of this direct interaction, Igoe explains that "when a user inserts a DVD into the DVD player **104**, it automatically causes the WHEH **102** to activate the DVD player **104** (or initiate a source change . . . if another source is already active in the [H]ES **100**)." *Id.*

While neither Garg nor Igoe alone discloses that the IR signal directly recognizable by a source or sink device is the same IR signal that causes the switching device to control a connection between the source and sink devices, the combination of the references is sufficient to render claim 5 obvious. Appx232;

14

Appx315. Each prior art reference discloses a switching device that offers multiple ways to perform source selection: Garg discloses that a user may perform source selection using buttons on the front panel of the switching device (Appx413 ¶ [0065]) or through a remote control sending an IR signal (Appx413 ¶ [0064]), and Igoe discloses that a universal remote control may be used for source selection (Appx451 ¶ [0042]) or that the switching device may automatically activate a source device when a user "interact[s] directly with [that] source device" (*Id.*).

Given these disclosures, a skilled artisan would have been motivated to modify Garg's switching device to allow for source selection in yet another way—allowing the switching device to recognize and act on an IR signal that is also intended for the source or sink device. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability."); *see also* Appx10-12. While this would require modification of Garg's switching device IR circuitry to add something such as a universal IR receiver, such a modification was well within the capabilities of a skilled artisan. *See* Appx315 (finding that it would have been obvious to modify the switching device of Garg). The specification itself admits that the use of a universal IR receiver was known in the art: "AV receiver **902** may be provided with a universal IR receiver capable of identifying and decoding the command transmission formats of a multiplicity of manufacturers, such as described for

example in U.S. Patent 7,042,366."  Appx48.  Thus, the modification would be no more than "[t]he combination of familiar elements according to known methods" which "yield[s] predictable results."  *KSR*, 550 U.S. at 416; *see also Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1298 (Fed. Cir. 2012) (stating that "predictability is a vital consideration in the obviousness analysis"); Appx10-12.

Finally, the Examiner articulated a sufficient reason to combine the references to reach the claimed invention.  Igoe's disclosure of a home entertainment hub including a universal remote that can control both the switching device and the source devices would have motivated a skilled artisan to modify Garg's switching device to enable it to change sources based on an IR signal also recognizable by a source or sink device, thereby simplifying the process of changing sources.  Appx11; Appx232; Appx315.  This is nothing more than combining two known remote control functions—switching source devices and directly controlling a source device—into a single IR signal.  *KSR*, 550 U.S. at 417 ("[A] court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions."); *see also ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1219 (Fed. Cir. 2016) (affirming a finding that a skilled artisan would have been motivated to modify the prior art to create "a single speaker for announcing both voice signals and identity information," even though neither prior art reference taught such a speaker); *In re NTP, Inc.*, 654 F.3d

1279, 1304 (Fed. Cir. 2011) (agreeing with the Board's conclusion that it would have been obvious to combine multiple communications into a single packet). Moreover, Garg and Igoe are directed to the same endeavor—a hub to connect source and sink devices in a home entertainment system—further supporting the Examiner's motivation to combine finding. Appx231-232; *see also In re Inland Steel Co.*, 265 F.3d 1354, 1362 (Fed. Cir. 2001) (affirming a finding of motivation to combine because, among other reasons, the prior art references come from the same field of art and address the same problem); *LG Elecs., Inc. v. Conversant Wireless Licensing S.A.R.L.*, 759 F. App'x 917, 925 (Fed. Cir. 2019) (nonprecedential) (stating that "[t]he fact that the references are directed to the same field of art helps support the Board's finding that a person of ordinary skill in the art would have been motivated to combine their teachings").

### C. Universal Electronics' Arguments Lack Merit

#### 1. The Examiner Established That Garg and Igoe Teach or Suggest the Claimed Switching Device

Universal Electronics argues that the Examiner failed to establish a prima facie case of obviousness because the rejection failed to show how Garg and Igoe teach or suggest the claimed invention. Br. at 19-22. According to Universal Electronics, neither Garg nor Igoe discloses a switching device that can detect and receive an IR signal, where the IR signal is also directly recognizable by a source

17

or sink device, as required by claim 5.  Universal Electronics' argument demonstrates an unduly narrow view of obviousness.

It was unnecessary for the Examiner to find that either reference individually teaches the requirement that the switching device receives and acts in response to an IR signal also recognizable by a source or sink device.  *In re Merck & Co.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986) ("Non-obviousness cannot be established by attacking references individually where the rejection is based upon the teachings of a combination of references.").  Nor was the Examiner required to show how the combination of references expressly teaches the precise limitation at issue.  *See, e.g.*, *KSR*, 550 U.S. at 418 (explaining that an obviousness analysis "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ"); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1307 (Fed. Cir. 2006) ("A claim can be obvious even where all of the claimed features are not found in specific prior art references, where 'there is a showing of a suggestion or motivation to modify the teachings of [the prior art] to the claimed invention.'") (citation omitted).  Instead, the relevant question "is not merely what the references expressly teach, but what they would have suggested to one of ordinary skill in the art."  *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976).

The concept of a switching device that switches sources in response to a source or sink device IR signal is suggested by the references' disclosures of the many different ways that a switching device allows a user to switch between source devices. Those ways include use of physical buttons on the switching device, use of a dedicated remote control, use of a universal remote control, and direct interaction with the source device. Appx413 ¶¶ [0064]-[0065]; Appx451 ¶ [0042]. The switching method of the claimed invention is no more than a predictable variation of what is taught in Garg and Igoe. *Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1338 (Fed. Cir. 2010) (explaining that if a skilled artisan "would have found the invention merely an easily predictable and achievable variation or combination of the prior art, then the invention likely would have been obvious"). Moreover, given that the specification acknowledges that a universal IR receiver was already known in the art (Appx48), there can be no dispute that a skilled artisan would have been aware of universal IR receivers, their uses, and the benefits they provide. *See Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (finding that the addition of a reader, which was a device commonly used in the field of electronics, to a prior art children's learning toy did not render the claim patentable).

Universal Electronics' primary concern centers on the allegation that "the Examiner did not propose any modifications to Garg's hub **500**." Br. 21. But this

puts form over substance, as the Examiner's rejection necessarily requires a modification to the hub to receive and act on IR signals recognizable by a source or sink device. Appx230-232. Moreover, the Examiner's Answer demonstrates that the Examiner's rejection required the modification of Garg's switching device. Appx315. When responding to the same argument that Universal Electronics now raises—that the rejection is flawed because it did not propose a modification to Garg's switching device—the Examiner "respectfully disagree[d]" and explained that the "Examiner believes it would have been obvious, based on the teachings of Igoe, to modify the switching device (Hub)/method of Garg." *Id.*; *see also In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1382 (Fed. Cir. 2007) (explaining that in analyzing motivation to combine, it is improper to "ignore the modifications that one skilled in the art would make to a device borrowed from the prior art").

While the Director acknowledges that the Examiner's rejection of claim 5 is concise and may not constitute "a model of clarity," (Appx230-232; *In re Applied Materials, Inc.*, 692 F.3d 1289, 1295 (Fed. Cir. 2012)), this Court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *In re NuVasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016) (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)); *see also In re Huston*, 308 F.3d 1267, 1280-81 (Fed. Cir. 2002) (affirming a Board decision while noting that the Board's "conclusions are cryptic, but they are

supported by the record").  The claimed invention is straightforward, as evidenced by the fact that the specification devotes only a single paragraph to disclosing the switching device.  Moreover, both prior art references are easily understandable and directly related to the same endeavor as the claimed invention—use of a switching device to control the connection between source and sink devices in a home entertainment system.  Under these facts, the Examiner's rejection was more than sufficient to apprise Universal Electronics of the basis for the rejection and to satisfy the agency's burden.  Appx7-8 (citing 35 U.S.C. § 132; *Jung*, 637 F.3d at 1362-63).

### 2.  The Examiner Articulated a Sufficient Reason to Combine Garg and Igoe

Universal Electronics next argues that the Examiner and Board failed to articulate a sufficient motivation to combine Garg and Igoe.  Br. at 23.  This argument is based on the incorrect assertion that the Examiner's rejection sought only to modify Garg's remote control.  *Id.* at 24.  As explained above, the Examiner acknowledged that the combination of Garg and Igoe would require modifying Garg's switching device to receive IR signals that are also recognizable by source or sink devices.  Appx315.  And Universal Electronics' own specification shows that use of a universal IR receiver was well known to a skilled artisan.  Appx48.

While Universal Electronics seeks a more detailed explanation of the motivation to combine the references, none is needed. As the Board properly explained, the combination "would have predictably used prior art elements according to their established functions." Appx12 (citing *KSR*, 550 U.S. at 417). There is no evidence that making the necessary modifications to Garg would be "uniquely challenging or difficult for one of ordinary skill in the art." *Leapfrog*, 485 F.3d at 1162. In this case—involving straightforward technology, a one-paragraph specification, and closely-related prior art—the fact that the proposed combination would simplify the user's source selection process is apparent on its face and requires no further explication. *Id.* (finding a motivation to combine when the proposed combination would provide simplified use); *see also Wyers v. Master Lock Co.*, 616 F.3d 1231, 1239 (Fed. Cir. 2010) (stating that "the legal determination of obviousness may include recourse to logic, judgment, and common sense").

In a footnote, Universal Electronics also asserts that the Board's statement that the combination of Garg and Igoe "would have predictably used prior art elements according to their established functions" presented an improper new ground of rejection. Br. at 25 n. 1 (quoting Appx12). But "arguments raised in footnotes are not preserved." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006). And if Universal Electronics wished to

challenge the Board's decision as containing a new ground of rejection, the proper way to do that was by filing a request for rehearing. 37 C.F.R. § 41.50(c). By failing to do, Universal Electronics forfeited its right to raise the issue before this Court. *Id*. On the merits, the argument fares no better because the Board's rather ordinary statement—that the combination would have predictably used prior art elements according to established functions—is no different than the Examiner's basis for making the rejection. Appx12; Appx232; Appx315; *In re Kronig*, 539 F.2d 1300, 1303 (CCPA 1976) (finding no new ground of rejection when "[t]he basic thrust of the rejection at the examiner and board level was the same").

## V.   CONCLUSION

For the foregoing reasons, the Board's decision should be affirmed.

Respectfully submitted,

July 14, 2022

/s/ Michael S. Forman
THOMAS W. KRAUSE
Solicitor

AMY J. NELSON
Senior Counsel for Patent Policy and
Litigation

MICHAEL S. FORMAN
MONICA B. LATEEF
Associate Solicitors
Office of the Solicitor
U.S. Patent and Trademark Office

Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035